UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEREK WOODLEY,

       Petitioner,

v.                                    Case No. 2:13-cv-350
                                     HON.  R. ALLAN EDGAR

DUNCAN MACLAREN,

       Respondent.

_____/

## MEMORANDUM AND ORDER

       Petitioner Derek Woodley, filed this petition for writ of habeas corpus challenging his December 17, 2008, convictions for first degree murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and two counts of use of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Petitioner was sentenced to mandatory life imprisonment without parole on his first degree murder conviction, a 25 to 50 year term of imprisonment on his assault conviction and consecutive two year terms of imprisonment on his felony firearm convictions.

       Petitioner argues that he is actually innocent because his shotgun accidentally discharged while he was reloading after shooting at the police officers outside of his bedroom who had entered his residence to conduct a check of Lindsay Knight, at the request of her mother.  The police officers entered the residence after two house guests let them inside.  Petitioner asserts that when his gun discharged he shot Lindsay Knight at close range in the head, accidentally killing her.  Petitioner was arrested after a seven hour stand-off when he surrendered the next morning.  Petitioner claimed that

the shooting was an accident.  The jury did not believe Petitioner's assertion of an accidental

discharge of his shotgun and convicted Petitioner of first degree premeditated murder.  Petitioner

submitted a December 2000, recall notice from the manufacturer of his shot gun showing that the gun

was under recall because it could accidentally discharge during loading.  PageID.45

Petitioner asserts:

I.  Petitioner was denied the effective assistance of trial counsel.

II.  The prosecution failed to disclose evidence necessary for Petitioner to establish the truth.

III.  Petitioner's convictions for first degree murder and assault with intent to commit murder are against the great weight of the evidence.

IV.  Petitioner was denied his right to have a properly instructed jury when the trial court failed to give a jury requested re-instruction.

V.  Petitioner was denied his right to allocution at sentencing.

VI.  The prosecution's use of post-*Miranda* silence during closing argument as substantive evidence of guilt violated Petitioner's right against self-incrimination.

VII.  The trial court abused its discretion in refusing to admit relevant evidence that the victim's parents had a child protective case for abusing and neglecting the victim.

VIII.  The Petitioner was denied due process of law when the prosecutor elicited testimony that the Petitioner had allegedly made threats toward the victim.

IX.  The Petitioner was denied the effective assistance of appellate counsel.

2

Respondent asserts that Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 ("AEDPA"). The one-year statute of limitations provided in § 2244(d)(1) is new, as there previously was no defined period of limitation for habeas actions.[1]   Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).   The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."   28 U.S.C.   § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 121 S. Ct. 2120 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

---

[1] Previously, the only time limit was provided in Rule 9 of the Rules Governing § 2254 Cases, which allows dismissal of a petition only under circumstances where the state has been prejudiced by the delay in filing.

The one-year limitations period applicable to § 2254 is a statute of limitations subject to equitable tolling. *See Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Lawrence*, 549 U.S. at 335 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Akrawi*, 572 F.3d at 260.

Petitioner concedes that without equitable tolling his petition would be considered filed late. On December 20, 2010, the Michigan Supreme Court denied Petitioner leave to appeal the judgment of the Michigan Court of Appeals, affirming his convictions. PageID.2247. Petitioner filed a motion for relief from judgment in the Allegan County Circuit Court on April 27, 2011. The Circuit Court denied Petitioner's motion on June 9, 2011. PageID.2066. Petitioner asserts that he did not receive that order until after he inquired with the court on June 1, 2012, and on June 27, 2012. Petitioner asserts that he received a letter dated July 2, 2012, informing him for the first time that his motion for leave to appeal was denied. Petitioner filed a motion for re-issuance of the June 9, 2011, order. Petitioner never received a response from the trial court.

Petitioner filed leave to appeal in the Michigan Court of Appeals which was denied for lack of jurisdiction on September 5, 2012. Petitioner's application for leave to appeal in the Michigan Supreme Court was filed on September 24, 2012. The Michigan Supreme Court denied

4

the application on September 3, 2013.  PageID.2617.  This petition was filed on November 18, 2013.

      The one-year limitations period applicable to § 2254 is a statute of limitations subject to equitable tolling.  *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court.  *See Hall v. Warden*, No. 09-3372, slip op. at 5 (6th Cir. Nov. 30, 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Cook v. Stegall*,  295 F.3d 517, 521 (6th Cir. 2002).  A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Holland*, 2010 WL 2346549, at *12 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, slip op. at 7; *Akrawi*, 572 F.3d at 260.

      Crediting Petitioner's assertion that he did not find out about the June 5, 2012, denial of his motion for relief from judgment until July 2012, equitable tolling would be appropriate.  Petitioner was acting pro se during this time period.  Further, Petitioner filed his appeals soon after he allegedly first learned of the denial of his motion for relief from judgment.  If the court credits Petitioner's assertions and accepts that he was diligent in pursuing his rights then equitable tolling would apply in this case and the petition may be considered timely filed.  The petition, however, fails on the merits of the claims presented.

5

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's

alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996).

Petitioner argues that his counsel was ineffective for not attending a hearing to adjourn trial because of the unavailability of witnesses. Defense counsel informed the court that there was no objection to an adjournment. Petitioner asserts that counsel should have argued that an adjournment was unnecessary and a prosecutorial stall tactic. However, Petitioner presents no evidence of prejudice as a result of the adjournment. Petitioner claims that counsel erred by not calling his parents to the witness stand. However, it is not clear what helpful testimony they might have provided since they were not present during the shooting or standoff. Petitioner claims that counsel should have challenged the search warrant. Petitioner does not explain what evidence he hoped to suppress by a search warrant challenge. The police were let into Petitioner's home, and Petitioner shot at them. No warrant was necessary under these factual circumstances. Petitioner argues that his counsel was ineffective for failing to investigate the claim of accidental discharge.

Petitioner presented this theory to the jury and had an expert testify on his behalf.   Petitioner has failed to show that his counsel was ineffective.  Petitioner has failed to show that the rejection of his motion for relief from judgment on his ineffective assistance of counsel claim was unreasonable.

Petitioner argues that the prosecutor failed to disclose to defense counsel Tracy Valind's statement to the police.  Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.   The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*,  *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

Petitioner has made no showing that the state withheld exculpatory evidence or that the statement if presented during trial would have resulted in a different finding by the jury. Petitioner has failed to show that the decision denying his motion for relief from judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues the verdict was against the great weight of the evidence. Petitioner fails to raise a constitutional issue in asserting this claim. This court does not weigh the evidence presented in a state criminal trial or make factual determinations. Rather, a habeas court analyzes issues involving constitutional claims or challenges based upon federal law that could apply in a state criminal trial. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). The Michigan Court Appeals considered and rejected Petitioner's claim that were insufficient evidence presented by the prosecutor to support Petitioner's convictions. The Michigan Court of Appeals explained:

> Defendant first argues that there was insufficient evidence of premeditation and deliberation to sustain his conviction for first-degree premeditated murder. We disagree. We review sufficiency of the evidence claims de novo, viewing the evidence in the light most favorable to the prosecution to determine if the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).
>
> "To prove first-degree premeditated murder, the prosecution must establish that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Mette*, 243 Mich App 318, 330; 621 NW2d 713 (2000). "Premeditation and deliberation may be inferred from the circumstances, including the defendant's behavior before and after the crime." *People v DeLisle*, 202 Mich App 658, 660; 509 NW2d 885 (1993). Premeditation may be established through evidence of such factors as "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998). Moreover, there must be "[s]ome time span between the initial homicidal intent and the ultimate killing," for a second look, to establish premeditation and deliberation. *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). The "second

10

look" required for premeditation and deliberation depends on the totality of the circumstances surrounding the killing. *People v Meier*, 47 Mich App 179, 183; 209 NW2d 311 (1973).

In this case, viewed in a light most favorable to the prosecution, there was ample evidence of premeditation and deliberation. Defendant's and the victim's relationship was tumultuous, including physical, emotional, and verbal abuse of the victim by defendant, which may be circumstantial evidence of premeditation and deliberation. See *Unger*, 278 Mich App at 231 ("Evidence showing marital discord is admissible as circumstantial evidence of premeditation and deliberation."). Defendant threatened to kill the victim. He thereafter drove off with the victim as she attempted to remove their son from the car. Over the course of the following 1-1/2 days, he limited the victim's communication with her family, refused to return the victim to her mother's residence, repeatedly misled the victim's mother about doing so, and shortly before the victim's death, sent their son to his sister's residence. The victim died during the later evening hours of December 10, 2007, or the early morning hours of December 11, 2007. The record demonstrates that defendant was with the victim during this period. It was undisputed that the victim was shot with a shotgun at close range. Defendant never told law enforcement officers, with whom he was in communication for much of a 6-1/2 hour stand-off, that he accidentally shot the victim or that she needed medical assistance. "[D]efendant's attempt to conceal the killing can be used as evidence of premeditation." *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). See also *People v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995) (a defendant's lack of remorse after the victim's killing would be relevant to determine whether there was premeditation and deliberation). On the record, based on the previous relationship between the defendant and the victim, defendant's actions before and after the crime; and the circumstances of the killing itself, we find that there was ample circumstantial evidence of premeditation and deliberation. *Plummer*, 229 Mich App at 300. Further, the record establishes that there was time for defendant to take the requisite second look, *Meier*, 47 Mich App at 191-192, as he had the victim in his control for 1-1/2 days before the murder.

Additionally, there was substantial evidence of defendant's consciousness of guilt in this case. Defendant repeatedly failed to comply with the police officers' orders to open the door, and he fired at Trooper Paul Gonyeau when the trooper kicked down the door. Such evidence demonstrates defendant's consciousness of guilt. See generally *People v Solmonson*, 261 Mich App 657, 666-667; 683

11

NW2d 761 (2004) (a defendant's nonresponsive conduct may be properly viewed as evidence of his consciousness of guilt); *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996) (a threat by a defendant against a witness is generally admissible to demonstrate consciousness of guilt). Further, defendant testified that he contemplated suicide throughout the stand-off, and his suicidal ideation may be used as circumstantial evidence of consciousness of guilt. See, *United States v Cody*, 498 F3d 582, 591-592 (CA 6, 2007).

While defendant testified that he accidentally shot the victim, the jury rejected that story, and we defer to their credibility assessment. *People v Harrison*, 283 Mich App 374, 378; 766NW2d 98 (2008). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence presented to permit a rational trier of fact to conclude that the essential elements of first-degree premeditated murder were proven beyond a reasonable doubt. *McGhee*, 268 Mich App at 622; *Mette*, 243 Mich App at 330.

Likewise, defendant's assertion that there was insufficient evidence to sustain his assault with intent to murder conviction related to his shooting of a Michigan State trooper also lacks merit. The elements of the offense of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). Intent to kill may be proved by reasonable inferences from the victim's testimony. *People v Davis*, 216 Mich App 47, 52-53; 549 NW2d 1 (1996). Notably, minimal circumstantial evidence is sufficient to prove defendant's intent. *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). "The use of a lethal weapon is the kind of evidence which will support an inference of an intent to kill." *People v Turner*, 62 Mich App 467, 470; 233 NW2d 617 (1975).

The testimony viewed in the light most favorable to the prosecutor was sufficient to permit a rational trier of fact to conclude that all of the elements of assault with intent to murder were proven beyond a reasonable doubt, where defendant fired a shotgun at close range at the trooper's torso. Defendant's claim that he was merely attempting to repel an intruder is self serving and not in keeping with the requirement that the evidence be viewed in a light most favorable to the prosecution. The evidence established that police made repeated announcements and knocks on the door before entering. Defendant fired the shotgun, at a height of a person's mid-section, in the direction of the door after police forced it open. If defendant had hit and killed the trooper, this would have been a murder. *People v*

> *Goecke*, 457 Mich 442, 463; 579 NW2d 868 (1998). Therefore, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence presented to permit a rational trier of fact to conclude that the essential elements of assault with to murder were proved beyond a reasonable doubt. *McGhee*, 268 Mich App at 622; *Brown*, 267 Mich App at 147-148.

Michigan Court of Appeals decision, PageID.2069-2071.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that petitioner committed the crime. The Michigan Court of Appeals decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that his rights were violated when the trial court did not re-read the jury instructions to the jurors in response to a jury question. The court stated:

> You have provided us with a question, in regard to , if we give one verdict on count five by the instruction defined as mistake assault on a third person, are we required to give the same verdict on count seven?
>
> And in response to that, I am going to reread to you two of the jury instructions that apply specifically, all right?
>
> And that is, the Defendant is charged with ten counts. There are separate crimes, and the Prosecutor is charging that the Defendant committed all of them. You must consider each crime separately in light of all the evidence in the case. You may find the Defendant guilty of all or any one or a any combination of these crimes, guilty of the less serious crimes or not guilty.

> If the Defendant - - and then in regard to count seven, mistake assault on a third person - -if the Defendant intended to assault one person, but by mistake or accident assaulted another person, the crime is the same as if the first person had actually been assaulted.

PageID.1952-1953.

The record is clear that the trial court answered the jury question. The court also denied Petitioner relief on this issue in ruling on Petitioner's motion for relief from judgment. PageID.2067. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, No. 09-2371, slip op. at 7 (6th Cir. Apr. 5, 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.* In order to show a constitutional violation, Petitioner must demonstrate that the instruction violated due process.

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

*Henderson,* 431 U.S. at 154. The evidence presented at trial, taken in the light most favorable to the prosecution, was sufficient to justify the instructions given by the court in response to the jury question. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the trial court denied him his right to allocution at sentencing by refusing to allow Petitioner to continue to present his side of the story. The sentencing transcript reflects that Petitioner was given time to discuss his pre-sentence report. The judge indicated that he would reschedule the sentencing at a latter time if Petitioner wished to go into more detail regarding the alleged inaccuracies in the report. However, after discussion with his attorney, Petitioner agreed on the record that none of the inaccuracies could have an effect on his sentencing. PageID.1980. Petitioner informed the Court that he did not agree with the jury verdict. PageID.1981. After Petitioner began to discuss justice, he changed course and started an attack on "Mark," "Jim," and "Tracy," not being there for the victim. At that point the judge interrupted and stated "[t]his is inappropriate." Defense counsel stated "[y]ou can't say this." *Id.* The judge explained that Petitioner can address the court, but may not engage in a conversation or colloquy. When asked if Petitioner had anything further to say, Petitioner responded that he did not. As the judge began to sentence Petitioner, Petitioner interrupted the judge, and the judge informed Petitioner that he was not going to argue with Petitioner. PageID.1983.

Petitioner's claim is based upon state law error at sentencing. However, "there is no constitutional right to allocution under the United States Constitution." *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997), *citing Hill v. United States*, 368 U.S. 424, 428 (1962). Moreover, the Michigan Court of Appeals rejected this claim under state law. PageID.2075. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

15

of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the prosecutor violated Petitioner's rights during closing argument by using post *Miranda* silence. In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the Supreme Court held "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." The theory underlying *Doyle* is that while *Miranda* warnings contain no express assurance that silence will carry no penalty, "such assurance is implicit to any person who receives the warnings." *Id.* at 618. On this reasoning, the Court concluded that it would be fundamentally unfair first to induce a defendant to remain silent through *Miranda* warnings and then to penalize the defendant who relies on those warnings by allowing the defendant's silence to be used to impeach an exculpatory explanation offered at trial. *Id.*

The Michigan Court of Appeals rejected this claim explaining:

> Our review of the record reveals that defendant has misstated the record. The record demonstrates that the prosecutor did not elicit defendants' pre-arrest, post *Miranda* silence during the proofs and did not reference such silence during closing argument. With respect to the challenged argument, we find that the prosecutor properly argued that defendant's actions before and afer the murder were proof of premeditation and deliberation.

PageID.2075.

Petitioner has failed to show that his rights were violated during closing arguments to the jury. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

16

Petitioner claims that the trial court improperly excluded evidence that the victim's parents had abused her for six or seven years prior to Petitioner shooting the victim. The Michigan Court of Appeals denied Petitioner's claim explaining:

> Defendant also argues that the trial court improperly excluded evidence regarding allegations that the victim's mother and stepfather committed child abuse against the victim in 2001 or 2002. Under MRE 402, "[a]ll relevant evidence is admissible." Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Defendant faced charges of open murder and unlawful imprisonment of the victim, among other charges. The question whether the victim sought to end her relationship with defendant was an underlying issue in this case, because defendant claimed that the victim was staying at her parents' residence out of necessity and not by choice and that the victim had no intention of ending their relationship. Therefore, evidence of prior abuse of the victim by her mother and stepfather would have been relevant to undermine credibility of the victim's mother, where she claimed that she was providing a safe haven for the victim. See *McGhee*, 268 Mich App at 637 (a witness' credibility is always relevant).
>
> However, relevant evidence may be excluded by operation of MRE 403, "[i]f its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." It is undisputed that the allegations of child abuse occurred six or seven years before the instant trial. How the victim may have viewed her parents' residence years before may have differed greatly from how she viewed it as a 19-year old mother of two small children looking for a residence other than with an abusive exboyfriend. Without the victim to provide an explanation, the jury would have been left to speculate on the importance of this evidence. The trial court appropriately concluded that there was a real concern of confusing the issues or misleading the jury with respect to speculative evidence involving allegations of abuse that were several years old. As our Supreme Court has noted, the MRE 403 determination is "'best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony . . .'" *People v Bahoda*, 448 Mich 261, 291; 531 NW2d 659 (1995), quoting *VanderVliet*, 444 Mich 81; People v Magyar, 250 Mich App 408, 416; 648 NW2d 215 (2002). "Close questions arising from the

trial court's exercise of discretion on an evidentiary issue should not be reversed simply because the reviewing court would have ruled differently," and "[t]he trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). We conclude on this record that the trial court did not abuse its discretion in this close evidentiary ruling, where it excluded the past allegations of child abuse of the victim by her mother and stepfather.

Defendant also claims that the exclusion of the proffered evidence amounted to a Confrontation Clause violation. This unpreserved allegation of error lacks merit. The Confrontation Clause does not confer on a defendant an unlimited right to cross-examine a witness on any subject. *People v Hackett*, 421 Mich 338, 347; 365 NW2d 120 (1984). Trial courts possess wide latitude with respect to the Confrontation Clause "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v Van Arsdall*, 475 US 673, 679; 106 S Ct 1431; 89 L Ed 2d 674 (1986). Such is the case here, where, as discussed previously, the challenged evidence was properly excluded by operation of MRE 403. Not only were the allegations of child abuse properly excluded, but defense counsel had other avenues to discredit the testimony of the victim's mother. The Confrontation Clause was not offended in this case. *Id.* Defendant has failed to establish plain error affecting his substantial rights regarding his Confrontation Clause violation. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

PageID.273-2074.

Petitioner has failed to show that his rights were violated by the exclusion of evidence surrounding the alleged abuse by the victim's parents. Further, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the trial court erred by admitting evidence that he threatened the victim in the past. Petitioner contends that the trial court abused its discretion when it admitted evidence where the probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

19

The Michigan Court of Appeals concluded:

> In the instant case, there was ample testimony that defendant threatened the victim in the past, and that he subjected the victim to verbal, emotional, and physical abuse. On appeal, defendant challenges testimony by the victim's mother that defendant threatened the victim by stating that, if she did not do what he wanted her to do, he was going to rape her younger sister. This threat was made to the victim, as a threat to her, to force her to comply with defendant's wishes. The challenged testimony was properly admitted pursuant to MCL 768.27b. The instant case involved domestic violence, because defendant caused or attempted to cause mental harm to the victim, a household member, and also engaged in activity toward the victim that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. MCL 768.27b(5)(a)(i) and (iv). The victim was a household member, because she was an individual with whom defendant formerly resided and an individual with whom defendant has or has had a dating relationship. MCL 768.27b(5)(b)(ii) and (iv).
>
> The challenged testimony, as well as the other evidence of previous acts of domestic violence, was also relevant to the determination whether defendant intended to kill the victim, and whether defendant acted with premeditation and deliberation in killing her. Both elements were necessary to prove the offense of first-degree premeditated murder. *Mette*, 243 Mich App at 330. Additionally, the challenged evidence was relevant in determining defendant's motive for killing the victim, and in determining defendant's credibility regarding his defense of accidental discharge. Motive is always relevant, even though it is not an essential element of murder. *People v Rice*, 235 Mich App 429, 440; 597 NW2d 843 (1999).

PageID.2073. Petitioner has failed to show that his Constitutional rights were violated by admission of his prior threats against the victim. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that his appellate counsel was ineffective for failing to raise the issues presented in his motion for relief from judgment on direct appeal.  The trial court rejected this argument concluding that Petitioner could not show merit on his newly raised issues and that it was proper for appellate counsel to focus on Petitioner's strongest arguments.  PageID.2067.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*  Petitioner has failed to show that his appellate counsel rendered ineffective assistance.

In summary, Petitioner has failed to support the claims asserted in this Petition. Accordingly, the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated:__5/31/2016_____                      _____*/s/ R. Allan Edgar*_____
                                             R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE